IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2016

## TIFFANY AMOS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-15-187     Roy B. Morgan, Jr., Judge**

_____

**No. W2015-01727-CCA-R3-PC  -  Filed April 28, 2016**

_____

The petitioner, Tiffany Amos, appeals the post-conviction court's denial of relief from her theft and criminal impersonation convictions, arguing that she received ineffective assistance of counsel and that her guilty pleas were unknowingly and involuntarily entered.  After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Tiffany Amos.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner pled guilty in the Madison County Circuit Court to theft of property and criminal impersonation and received an effective sentence of four years.[1]  Thereafter, she filed a timely *pro se* petition for post-conviction relief, arguing that her guilty plea was involuntary and that counsel was ineffective in advising her to plead guilty although

---

[1] A transcript of the guilty plea hearing and judgment sheets were not included in the record on appeal.

he knew someone else had confessed to the crimes. The post-conviction court appointed counsel and conducted an evidentiary hearing on the matter.

At the evidentiary hearing, the petitioner testified that she met with counsel twice before the entry of her guilty plea. She said that she has always maintained her innocence, even at the plea hearing. She claimed that she did not receive discovery until after she had pled guilty. The petitioner stated that counsel mentioned that he had a letter from another person confessing to the crimes but that he thought it would be in her best interest to plead guilty because her criminal record was extensive. She said that she pled guilty to crimes she did not commit because she was scared due to her having an extensive record.

The petitioner admitted that she previously made her living by shoplifting, although she claimed to have stopped a few months before the theft in this case. The petitioner acknowledged that the author of the letter confessing to the crimes was her romantic partner, with whom she arrived to the department store in the same vehicle on the day of the theft. However, she claimed that they did not enter the store together and were not working together. The petitioner also acknowledged that, when she was arrested, she had someone else's identification on her, she refused to tell the police her true identity, and she refused to identify her co-defendant for the police.

The petitioner claimed that she did not understand that she had the right to go to trial because she "thought that right was out the door when my attorney was telling me it was in my best interest to take the plea because of my criminal history." However, she admitted that the trial court told her at the plea colloquy that she could go to trial if she preferred and that she decided to plead guilty based on counsel's advice. Nevertheless, the petitioner claimed that she did not knowingly plead guilty because she did not know that she could have possibly had a different outcome despite her criminal history.

Counsel testified that he obtained and reviewed discovery from the State pursuant to an open file policy, and he discussed the discovery with the petitioner. In the discovery documents was a letter from the petitioner's co-defendant, Ms. Pinkerton, essentially stating that Ms. Pinkerton was guilty of the crimes and not the petitioner. He told the petitioner that Ms. Pinkerton's letter was something that could be brought out at a trial, if the petitioner chose to go to trial, but that the letter would not ensure an acquittal. Counsel discussed with the petitioner that the State had testimony from the store clerk and security camera footage that showed the petitioner picking up items and giving them to Ms. Pinkerton. Counsel also discussed the petitioner's lengthy criminal history with her and how the State could use that history to impeach her.

2

Counsel testified that the ultimate decision to plead guilty was the petitioner's, and he did not force her to take a plea. The petitioner was advised of all of her constitutional rights prior to making the decision, and counsel thoroughly reviewed the plea with her. At the plea hearing, the trial court confirmed with the petitioner that counsel had gone over the plea with her and that she understood her rights. Counsel stated that the plea agreement he negotiated with the State provided for the petitioner to be sentenced as a Range III offender instead of a career offender. He further negotiated the sentence down from six years to four years.

On cross-examination, counsel recalled that, on the morning of the guilty plea, the petitioner "indicated . . . concern that she felt that only Ms. Pinkerton should be convicted of the offense."

After the hearing, the post-conviction court made oral findings, followed by a written order, denying the petition. The post-conviction court found that the petitioner was not credible compared to counsel. The court also found that the petitioner had "vast experience" and knowledge about the criminal justice system. The court recalled that the petitioner "very specifically" stated under oath that she was aware of what she was doing in pleading guilty. Accordingly, the court determined that the petitioner's decision to accept a negotiated plea agreement was "freely, voluntarily, knowingly, [and] intelligently" made and that the petitioner did not receive ineffective assistance of counsel.

## ANALYSIS

On appeal, the petitioner argues that she received ineffective assistance of counsel and that her guilty pleas were unknowingly and involuntarily entered.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984). The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 553 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The petitioner asserts that she received ineffective assistance of counsel because counsel insisted that it was in her best interest to plead guilty despite that she maintained she was innocent and counsel was aware that another person had admitted to committing

4

the crimes.  As a corollary to the issue, the petitioner also asserts that her guilty plea was unknowingly and involuntarily entered because she was scared and nervous due to her lengthy criminal record, and she "thought that her right to trial went away after [counsel] told her that it was in her best interests to plea [sic] because of her criminal history."  She claimed that she was not aware that she "could have possibly had a different outcome despite having a bad criminal history."

We initially note that our review is somewhat hindered because a transcript of the guilty plea hearing and judgment sheets were not included in the record on appeal.  However, from the record available, we are able to determine that the petitioner has not established a claim for post-conviction relief.

At the evidentiary hearing, counsel testified that he discussed with the petitioner the State's evidence against her and explained to her that the defense could use Ms. Pinkerton's letter at trial but that the letter would not ensure an acquittal.  Counsel also discussed the petitioner's lengthy criminal history with her and how the State could use that history at trial to impeach her.  Counsel stated that the petitioner was advised of all of her rights prior to making the decision and that the ultimate decision to plead guilty was the petitioner's.  The petitioner claimed that she did not understand that she had the right to go to trial because she "thought that right was out the door when my attorney was telling me it was in my best interest to take the plea because of my criminal history."  However, she admitted that the trial court told her at the plea colloquy that she could go to trial if she preferred and that she decided to plead guilty based on counsel's advice.  The post-conviction court found counsel's testimony to be more credible than the petitioner's.

The petitioner's criminal record consists of twenty-six prior convictions, many of which involved crimes of dishonesty that could have been used to impeach her testimony at trial.  There was also evidence in the form of testimony from the store clerk and security camera footage that the petitioner passed items to her co-defendant in the store where the theft occurred.  There was further evidence that the petitioner lied to the police about her identity and refused to help the police identify the person who actually took the items out of the store.  Counsel was not ineffective simply because he warned the petitioner that Ms. Pinkerton's letter claiming responsibility might not necessarily equate to an acquittal.

The evidence shows that the petitioner was very familiar with criminal proceedings, was represented and advised by competent counsel, and avoided a greater penalty that could have resulted from a jury trial.  We conclude that the proof indicates that the petitioner's plea was knowingly and intelligently entered with the effective assistance of counsel.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE